UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Kaibin Guan

_____

Write the full name of each plaintiff.

1:18 CV 02417
(Include case number if one has been assigned)

-against-

City of New York, Officer
Peter Boyle, in his individual and
official capacities; Officer
Luis Larasaavedra in his individual and official capacities.

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

AMENDED
COMPLAINT

Do you want a jury trial?
☑ Yes   ☐ No

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/8/18

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 1/9/17

## I. BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

■ Federal Question

☐ Diversity of Citizenship

### A. If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

42 USC § 1983

42 USC § 1981

### B. If you checked Diversity of Citizenship

#### 1. Citizenship of the parties

Of what State is each party a citizen?

The plaintiff, _____, is a citizen of the State of
            (Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____.

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2

If the defendant is an individual:

The defendant, _____ , is a citizen of the State of
         (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If the defendant is a corporation:

The defendant, _____ , is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____ .

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| Kaibin | | Guan |
|---|---|---|
| First Name | Middle Initial | Last Name |

33 West End Ave Apt. 10H
**Street Address**

| New York | NY | 10023 |
|---|---|---|
| County, City | State | Zip Code |

| 347-901-1279 | Kaibinguan@gmail.com |
|---|---|
| Telephone Number | Email Address (if available) |

Page 3

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:
First Name: City   Last Name: of New York
Current Job Title (or other identifying information): 
Current Work Address: 100 Church Street
County, City: New York   State: NY   Zip Code:

Defendant 2:
First Name: Luis   Last Name: Lara saavedra
Current Job Title (or other identifying information): Officer (shield no. 19150)
Current Work Address: 306 West 54th Street (Midtown North Precinct)
County, City: NY   State: NY   Zip Code: 10019-(5102)

Defendant 3:
First Name: Peter   Last Name: Boyle
Current Job Title (or other identifying information): Officer (shield no. 18572)
Current Work Address: 306 West 54th Street (Midtown North Precinct)
County, City: NY   State: NY   Zip Code: 10019-(5102)

Defendant 4:

_____ _____
First Name                         Last Name

_____
Current Job Title (or other identifying information)

_____
Current Work Address (or other address where defendant may be served)

_____ _____ _____
County, City                       State            Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: A) Mount Sinai West / Roosevelt Hospital
B) Metropolitan Hospital

Date(s) of occurrence: November 13, 2017

## FACTS:
State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

See attached statement of facts - Attachment A

## INJURIES:

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

- Emotional distress and suffering

## IV. RELIEF

State briefly what money damages or other relief you want the court to order.

- $ 5,000,000
- expungement of record of Ms. Guan's evaluation at Metropolitan Hospital on Nov. 13, 2017

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

Dated: 08/08/2018

Plaintiff's Signature: *GuaKaiB*

First Name: Kaibin
Middle Initial: A
Last Name: Guan

Street Address: 33 West End Ave., 10H
County, City: New York, NY
State: NY
Zip Code: 10023

Telephone Number: 347-901-1279
Email Address (if available): kaibinguan@gmail.com

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☐ Yes  ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Attachment A to the Complaint of Kaibin Guan[1]

1. Plaintiff Kaibin Guan is a fifty-one year old Chinese woman.

2. Plaintiff Kaibin Guan is the mother of an adult son, Alfred Lin, who is severely developmentally disabled. Alfred lives with her, and she is his primary caretaker while working every day as an interpreter for various state and city agencies.

3. On the morning of November 13, 2017, at approximately 9:30 a.m., while Ms. Guan was attempting to leave for work, several caseworkers from the New York City Department of Adult Protective Services, and several police officers, entered Ms. Guan's home purportedly to determine Alfred's well-being. The caseworkers decided to remove Alfred from his home, despite Ms. Guan's objection.

4. Ms. Guan went to the Emergency Room of the hospital closest to her home – Mount Sinai West/Roosevelt Hospital – on 10th Avenue and 59th Street in Manhattan, and was told by a social worker for the Comprehensive Psychiatric Emergency Program ("CPEP") at that hospital, Monica Lamb, that she could see Alfred later that day at 6 pm.

5. A CPEP psychiatrist gave Ms. Guan a "Notice of Status and Rights – C.P.E.P. Emergency Admissions" that was addressed to her son Alfred, and which reflected Alfred's admission that day as an "emergency-status patient" for "observation, care, and treatment" at the CPEP. (See Exhibit A). The Notice stated that "you, and anyone acting on your behalf, should feel free to ask C.P.E.P. staff about your condition, your status and rights under the Mental Hygiene Law, and the rules and regulations of this program."

---

[1] This document was prepared with assistance from the New York Legal Assistance Group's Legal Clinic for Pro Se Litigants in the Southern District of New York.

6. Ms. Guan was provided no other information about Alfred. She was not told if he was upset. She was not told the type of care he was receiving. She was not told if he was being given all of his medications.

7. At approximately 3:15 p.m., Ms. Guan, desperate to see Alfred, called 911 in the belief that the police could help her find out if Alfred was OK. She told the 911 operator that her son was removed from his home and committed to the hospital without her consent, and nobody at the hospital was allowing her to see her son or giving her the information she needed about her son. At approximately 4:30 p.m., NYPD Officer Peter Boyle, Shield No. 18572 ("Officer Boyle") and NYPD Officer Luis Larasaavedra, Shield No. 19150 ("Officer Larasaavedra") arrived and spoke to the nursing and security staff of the hospital. The two officers then told Ms. Guan that she couldn't do "this" again, which she understood to mean that she couldn't continue to ask about Alfred's status or condition, and would be removed from the ER if she did so.

8. At approximately 5:30 p.m. that same day, Ms. Guan was denied access to her son by the CPEP staff despite their earlier statement that she would be able to see Alfred at 6 p.m.

9. Ms. Guan was extremely worried about the well-being of her son because of how his involuntary commitment to the CPEP might aggravate his developmental disability, and because she wanted to see how he was handling his admission to the CPEP.

10. Ms. Guan, therefore, asked the nursing staff in the Emergency Room for more information about her son, and asked again to see him. Her requests were denied, and she was forcibly removed by hospital security guards from the Emergency Room to the street outside the hospital. At no point while she was speaking to the hospital staff or being removed from the hospital, did Ms. Guan assault, threaten to physically assault anyone, harm herself, or threaten to harm herself, nor did she attempt to do any of those acts. Nor did Ms. Guan present as having

any auditory or visual hallucinations. She was well groomed, clothed, and appeared in good physical health.

11. Shortly thereafter, Ms. Guan called 911 again, and told them that she was not able to see her son. Officer Boyle and Officer Larasaavedra returned to the hospital at about 6:30 p.m. Ms. Guan was in the ER at the security desk speaking to a nurse manager and the head of security. Officer Boyle and Officer Larasaavedra then told Ms. Guan that they had warned her previously, and then her hands were handcuffed behind her back in the ER. Officers Boyle and Larasaavedra took Ms. Guan out to the street, her hands still handcuffed behind her back, where she was forced to wait in the cold for at least 15 minutes until an ambulance came. She was not allowed to leave on her own volition.

12. At no point while was interacting with the police, did Ms. Guan assault, threaten to physically assault anyone, harm herself, or threaten to harm herself, nor did she attempt to do any of those acts. Nor did Ms. Guan present as having any auditory or visual hallucinations. She was well groomed, clothed, and appeared in good physical health.

13. Ms. Guan was humiliated and frightened by the way the police treated her in front of everyone in the ER and on the street.

14. Ms. Guan was transported by ambulance, still handcuffed, to Metropolitan Hospital, where she was put in a room just outside the psychiatric ward for 20 minutes, still handcuffed. Ms. Guan was then admitted to the psych ward, and was held there for several hours, during which she was interviewed and tested by a nurse, a psychiatrist, and the psychiatrist's supervisor. She was diagnosed as "Unspecified mood (affective) disorder." (*See* Exhibit B). She was not given any medication for this alleged diagnosis.

15. At 11:33 p.m., after several hours in the psych ward, Ms. Guan was officially discharged. She left the hospital at about midnight, and went home. She was not able to see her son Alfred until 2 p.m. the following day.

16. Prior to this occasion, Ms. Guan had never been hospitalized for a mental health condition.

17. Throughout this entire incident, Ms. Guan was well groomed, clothed, and appeared in good physical health. At no point during the entirety of this interaction did Ms. Guan verbally or physically threaten, intimidate, or frighten another person, nor did she attempt to do any of those actions. She did not physically assault anyone, harm herself, or did attempt to do any of those acts. Nor did Ms. Guan present as having any auditory or visual hallucinations.

18. Ms. Guan was never an imminent threat to herself or others. She never consented to being taken to the hospital.

19. At no point was Ms. Guan given a ticket, a summons, or arrested for trespass.

**Exhibit A**

## NOTICE OF STATUS AND RIGHTS
## C.P.E.P. EMERGENCY ADMISSION
(to be given to the patient upon initial examination and retention by a C.P.E.P. staff physician)

Section 9.40 Mental Hygiene Law

Patient's Name: LIN, ALFRED
ED106884
MRH 8778182
SER# 000492829672
DOB 12/05/1995  21  M
VST DATE 11/13/2017

Facility Name: _____

Date of Arrival at C.P.E.P: 11 / 13 / 17

TO: **Alfred Lin**

Based upon an initial examination by a staff physician, you have been admitted as an emergency-status patient to this Comprehensive Psychiatric Emergency Program (C.P.E.P.) for immediate observation, care and treatment. Within 24 hours of the time you are received in the C.P.E.P. emergency room, you will be examined by another physician, who is a member of the psychiatric staff of the C.P.E.P. If he or she confirms the first physician's findings, you will then be moved to an extended observation bed and may be kept in the C.P.E.P. for a period of up to 72 hours from the time you are received in the emergency room. During this 72 hour period you may be released, asked to remain as an informal-status patient, or be admitted to a psychiatric hospital as an emergency, involuntary or voluntary patient.

You, and anyone acting on your behalf, should feel free to ask C.P.E.P. staff about your condition, your status and rights under the Mental Hygiene Law, and the rules and regulations of this program.

If you, or those acting on your behalf, believe that you do not need immediate observation, care and treatment, you or they may make a written request for a court hearing. Copies of such a request will be forwarded by the C.P.E.P. director to the appropriate court and the Mental Hygiene Legal Service.

### MENTAL HYGIENE LEGAL SERVICE

The Mental Hygiene Legal Service, a court agency independent of this program, can provide you and your family with protective legal services, advice and assistance, including representation, with regard to your hospitalization. You are entitled to be informed of your rights regarding hospitalization and treatment, and have a right to a court hearing, to be represented by a lawyer, and to seek independent medical opinion.

You, or someone acting on your behalf, may see or communicate with a representative of the Mental Hygiene Legal Service by telephoning or writing directly to the office of the Service or by requesting C.P.E.P. staff to make such arrangements for you.

The Mental Hygiene Legal Service representative for this C.P.E.P. may be reached at:

**Mental Hygiene Legal Services**

**646-672-6181 / 6180**

THE ABOVE PATIENT HAS BEEN GIVEN A COPY OF THIS NOTICE.

_____     11/13/17
Signature of Staff Physician           Date

COPIES TO: Persons designated by patient to be informed of admission. (If None, type in "NONE".)

A copy of this Notice of Status and Rights is also being sent to the Mental Hygiene Legal Service. State and Federal Laws prohibit discrimination based on race, color, creed, national origin, age, sex or disability.

Exhibit B

Discharge and Aftercare Plans
Metropolitan Hospital Center
Psychiatric Emergency Room
212-432-7312

Name: Guan, Kaibin    DOB: 11/04/1966

Address: 33 West End Avenue, New York NY 10023

Medical Record #: 1854305-1    Sex: F

Date/ Time of Discharge: Mon 11/13/2017 23:33

Attending Physician: Tariq Mahmood, MD

Provider: George D Ide, MD

Diagnosis: Unspecified mood [affective] disorder

## DISCHARGE INSTRUCTIONS

Follow up with walk in clinic in the morning at 8AM

## TESTS & PROCEDURES

## PRESCRIPTIONS PROVIDED

The Psychiatrist and the Registered Nurse will review your prescribed medications with you. It is important that you take the medications as prescribed.

If you're experiencing side effects like dizziness, headache, blurry vision, stiffness, palpitations, tightness, withdrawals, notifiy your doctor or go to the nearest emergency room.

Please let your doctor know if you are/will be taking any over the counter medications such as vitamins, herbals, pain relievers, etc. so he can advise you about possible drug interactions.

Other Prescriptions Information: _____

## FOLLOW UP APPOINTMENT INFORMATION

WIC at 8AM 11/14/17

Contact Numbers for Clinics:

Mental Health Clinic: (212) 423-6645
Wellness and Recovery Clinic: (646) 672-3600
ACT: (212) 423-8700
Medical Clinic: (212) 423-7000
Other: _____

KEEP THIS PAGE IN YOUR WALLET / *MANTENGA ESTA PAGINA EN SU CARTERA*

MY PSYCHIATRIC ADVANCE DIRECTIVES / *MIS VOLUNTADES ANTICIPADAS PSIQUIATRICAS*

Name / *Nombre*: Guan, Kaibin                     DOB / *FDN*: 11/04/1966

Person to be notified in case of mental health crisis:
*Persona quien debe ser notificado en caso de una crisis de salud mental:*

Name / *Nombre*: _____ Telephone#: _____

Where I would like to go if emergency treatment or hospitalization required:
*Donde preferiria ir para tratamiento de emergencia u hospitalizacion si es requerido*

_____

Alternatives I prefer to hospitalization: *Alternativas que prefiero a hospitalizacion*

_____

Health Care Professionals who will be involved in my care:
*Profesionales de salud que participaran en mi cuidado*

_____

Medications preferred: / *Medicamentos preferidos:*

   By Mouth / *Orales:* _____

   By Injection / *Por Inyeccion:* _____

Family / friend / significant other who will be involved in my care:
*Familiar / amigo / pareja que participaran en mi cuidado*

_____

Medical conditions / allergies I have:/ *Condiciones medicas / alergias que tengo:*

_____

SERVICES & OTHER HELPFUL NUMBERS/ *SERVICIOS Y OTROS NUMEROS UTILES*
Mental health resource / *recursos de salud mental:* 1-800-LIFENET (1-800-543-3638)
For life threatening situations / *Para situaciones graves o mortals:*   911
To contact any Drop-In Centers / *Para Centros de sin cita:* 311
Narcotics Anonymous: 212-929-6262        Alcoholic Anonymous: 212-647-1680
Cocaine Anonymous:   212-262-2463        Others:
Marijuana Anonymous: 212-459-4423

SIGNATURES / *FIRMAS*

_____      _____
Patient Signature / *Firma del Paciente*         Date/ *Fecha*

_____      _____
Next of Kin/Legal Guardian Signature (when applicable)    Date/ *Fecha*
*Firma del Pariente Mas Cercano/Tutor Legal (si necesario)*

MHC Psychiatric Emergency Room Discharge and Aftercare Plans          Cont.

Name: Guan, Kaibin            MRN: 1854305-1          Sex: F   DOB: 11/04/1966

SIGNATURES

_Guan Kai Bin_ _____   __11/13/17__
Patient Signature                                    Date

_____      _____
Next of kin/ Legal Guardian Signature (when applicable)   Date

Discharged To _____      _____
                                                     Date

Psychiatrist _George Ok, M.D._ _____     __11/13/17__
                                                     Date

Registered Nurse _Jose Martinez_ _____     __11/3/17__
                                                     Date

Social Worker _____      _____
                                                     Date